## No. 13,387.

VICKSBURG, SHREVEPORT AND PACIFIC RAILROAD COMPANY VS. LEM SCOTT, SHERIFF, ET AL. INTERVENTION OF NEW ORLEANS & NORTH WESTERN RAILROAD COMPANY.

### SYLLABUS.

Conceding that prior to the passage of Act No. 106 of 1892, a property taxpayer had the right to contest judicially the legality of a tax levied upon his property under a tax, voted in aid of a railroad corporation at a special election ordered by a police jury under Article 242 of the Constitution of 1879, and Act No. 35 of 1886, upon the ground that the police jury was without jurisdiction to order the election for the reason that the petition presented to it asking for such election had not been signed by the number of property taxpayers required by the Act of 1886; that contest would be barred by estoppel and acquiescence if the right or exercise of the right were unreasonably delayed and action taken only after the railroad had been constructed and the corporation had expended large amounts of money upon the faith of the official promulgation of the result of the election. He would not be permitted individually to reap benefits and repudiate obligations.

The provisions of Act 106 of 1892, authorizing judicial contests of special elections held under Article 242 of the Constitution of 1879, apply only to cases where the contest could be instituted within the limit of time prescribed by that act for the bringing of such a contest after the promulgation of the result of the election.

The fact that a special tax in aid of a railroad should have been voted by the property taxpayers of a parish furnishes no ground of complaint against another special tax being voted for, where the corporation in whose favor the first tax was voted has released and relinquished all claim to the same and the tax has lapsed by failure of performance of the conditions upon which the tax was to be exigible.

Where a tax in favor of a railroad has been voted by the property tax owners of a parish at a special election, and there being doubts as to the legality of the proceedings, the question of the imposition of the tax is submitted to the taxpayers at a second election under reservation to the railroad of any rights which it might have acquired under the first election, should the second be adverse to it; a taxpayer can not complain, when the tax is again voted at the second election, that a double tax of five mills has been imposed upon his property. Though a tax of five mills was twice voted for,

but one tax of five mills was to be enforced—one payment or satisfaction would exhaust the tax.

A special tax voted in favor of a railroad corporation in aid of the construction by it of a certain road inures to the benefit of a corporation resulting from the consolidation of that corporation with another.

The object of the tax being the construction of the road, the consolidation of the two corporations carried with it no significance as to the legality and enforcibility of that tax.

A PPEAL from the Sixth Judicial District, Parish of Richland— Ellis, J.

Stubbs & Russell for Plaintiff, Appellant.

Lazarus & Luce for Intervenor, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J. The petition in the present action was filed in the District Court of Richland on the 24th of July, 1891, and service accepted and citation waived upon the same day.

In the petition, plaintiff alleged that it was the owner of a large number of tracts of land in the parish of Richland which it set out and described; that the sheriff of the parish of Richland as tax-collector, on the 22nd of December last (illegally) demanded of petitioner, as State, parish, levee and special railroad tax, on a total valuation of said property, the sum of two thousand five hundred and four and 24-100 dollars, being, as claimed by said sheriff and tax-collector, six hundred and forty-five 77-100 dollars for State tax, nine hundred and fourteen 83-100 dollars for parish tax, four hundred and five 50-100 dollars for levee tax, and five hundred and thirty-eight 14-100 dollars for special tax for benefit of the New Orleans and North Western Railroad Company; that said Lem Scott, sheriff and tax-collector, had advertised the aforesaid property of petitioner for sale at tax-collector's sale, to take place on Saturday, the 25th of July, instant, unless two thousand eight hundred and seventy-eight 33-100 dollars, be paid him for taxes, interest and costs claimed thereon, and petitioner feared that the said sheriff would proceed to attempt to sell its said property, unless stopped by an injunction; that such proceeding would work petitioner an irreparable wrong—said taxes not being legally demandable, or owing by it,—and an injunction was absolutely necessary for the protection of its interest, and against the

illegal acts of said sheriff and tax-collector; that of the taxes claimed illegally by said sheriff and tax-collector was the sum of five hundred and thirty-eight and 14-100 dollars on account of a special tax levied by the police jury of Richland parish for 1890 of five mills, for the benefit of, and to be paid as a donation or *bonus* to the New Orleans and North Western Railroad Company, which was made pursuant to a pretended election therefor, in January, 1890; that said tax and all the acts of the police jury, and all other persons leading up to the same, were illegal, null and void, and in violation of both the constitution of the United States and of the State of Louisiana:

1. That the tax was intended to force a contribution from the taxpayers to enable the parish to bestow as a gratuity, a donation upon a private corporation, and utterly without compensation to the taxpayer:

2. That the authorities of Richland parish had already exceeded their doubtful power which was limited in number to one grant, and to five mills, and they were utterly without authority further to extend their bounty to railroads or other enterprises; That said Police Jury, on the petition of the New Orleans, Natchez and Fort Scott Railroad Company, and at great expense, to-wit: in November, 1886, had already caused an election for a similar bounty to that railroad company, to be held, and that it was claimed by said railroad, that the tax-payers had authorized said tax, and petitioner, without admitting the validity of this claim or tax, averred that the authorities of Richland parish had exhausted their authority under the constitution; that if this tax was lost, which is charged, it was by the bad faith of the beneficiary in failing to comply with the reasonable condition; that notwithstanding this, said police jury, at the demand of another railroad company, viz: the Louisiana and Arkansas Railroad, caused an election to be held in August, 1887, in said parish, to provide a similar donation of five mills for ten years in their favor, which was also declared adopted, though in excess of the authority under the constitution, thus subjecting the tax-payers, if liable at all, to special tax for ten years, and for ten mills on all property in the parish; that said ordinances were unrepealed, and notwithstanding the Police Jury had thus exhausted its authority, proceedings were taken by it to fasten a tax of five mills more in favor of the New Orleans and North Western Railroad Company; that notwithstanding the waiver by the latter company of the first tax, in case this last demand was

granted, they yet claimed it was valid and the said Police Jury was without authority to submit their proposition to the tax-payers, or to take any steps to encourage its adoption, their authority having been exhausted, as had been before set forth:

3. That the election held for the tax being enforced, was not held under the general election laws of the State, but was conducted and held under the direction of the feed agents of the said New Orleans and North Western Railroad Company:

4. That, notwithstanding the reports and returns, neither a majority in numbers, nor in value, of the property tax-payers in Richland parish, voted in favor of the tax at said election:

5. That more than one hundred persons who were residents, and who were not possessed of the legal qualifications to vote, were induced and persuaded to vote at said election for said tax, without whose votes it was not carried, either by numbers or amount, and, therefore, it was fraudulent and void:

6. That more than one hundred persons, resident in said parish and taxed to the value of fifty thousand dollars, did not vote in person, but that other persons, with or without their consent, did vote their names and property for said tax, which was a clear violation of law, and without which said tax was lost both in number and amount:

7. That more than one hundred tax-payers and more (taxed over one hundred thousand dollars) not having the constitutional qualifications, nor the right to vote, either voted in person, or their names and property in many instances, without their authority, were voted or declared voted by others, in favor of said tax, without which neither in number nor amount, was said election carried, and said proceeding was a fraud on the rights of the tax-payers:

8. That a large number of minors and married women, as petitioner was informed, to the number of fifty, who owned taxable property to the value of fifty thousand dollars, were permitted to vote, or their names and property were voted for them and counted in favor of the tax, which was clearly illegal, and without which said election was lost, both in numbers and amount:

9. That a large number of persons who were acting in a fiduciary capacity were induced to vote, or their names and their property were voted by others for the tax, without which the tax was defeated, both in numbers and amount; that the declaration and proclamation that said tax was carried was based upon improper and incorrect and il-

legal returns and was a gross error, and that the authorities were grossly imposed upon by those interested in carrying said election; that the ordinance bearing said tax was, therefore, based upon error and fraud, and was of no binding effect and the tax levied thereunder as aforesaid, illegal, fraudulent and unconstitutional and void, and imposing on the tax-payers of the parish an onerous burden for many years, and the courts should protect the tax-payers from the fraud.

In view of the premises, petitioner prayed that the court grant an order of injnuction, restraining Lem Scott, sheriff, and *ex-officio* tax collector in the parish of Richland, from further proceedings in the enforcement of the collection of taxes as set forth; and that Robert A. Wynn, as president of the Police Jury, representing the parish of Richland, and the said Lem Scott, sheriff, be duly cited to answer hereto, and, upon a hearing, that the tax levied by the Police Jury of Richland parish of the —— day of ——, 1890, requiring the payment of five mills for the New Orleans and Northwestern Railroad for ten years, be declared unconstitutional, illegal, null and void, as well as all the proceedings of said Police Jury, tending to said levy and the election therefor; and that said sheriff be perpetually enjoined from all acts and efforts to enforce the collection of same against petitioner.

An order of injunction was granted as prayed for.

Defendants excepted:

1st. That plaintiff could not sue to annul the special tax voted in favor of the New Orleans and North Western Railway Company, without making said railway company a party thereto, nor contest said special tax in this collateral proceeding. In the event said above exception was overruled, then and in that event, the defendants excepted:

1st. That plaintiff's petition sets forth no right or cause of action;

2nd. That the issue presented by plaintiff's petition was not one of judicial cognizance, and the court was without jurisdiction, *ratione materiae*, to entertain or try said contest, there being no statute authorizing the court to entertain and determine a contest of the special election at which said special tax was voted:

3rd. In case it should be held that the court had jurisdiction to entertain and determine such a contest, the said action contesting said election was not filed within the time prescribed by law in which elections could be contested, and, at all events, too late, the said railroad having been constructed on its present line and the railroad com-

pany and parties interested therein having made large expenditures of money on the faith of said tax having been voted and carried;

4th. The parties having participated in said election by voting at same were now estopped from contesting its validity, and were further estopped and precluded from contesting and denying the authority of the Police Jury to order and have said special election held, and from denying the regularity, legality and validity of said submission.

On the same day the New Orleans and North Western Railway Company, appearing through and represented by C. H. Hammett and W. D. Jenkins, receivers of the same, by a decree of the United States Circuit Court for the Western District of Louisiana, filed an intervention in the cause.

The defendants, after pleading the general issue, answered, admitting the special election in 1890, and the voting of a special tax of five mills for ten years in favor of the railroad company. They averred that said special tax was declared and returned carried by the proper election officers, and was so promulgated and levied for 1890, excepting a few delinquents. They averred that the Police Jury had full legal authority to order said special election and to submit the ordinance to a vote of the property tax-payers of Richland parish; that at the time of said special election and submission the Louisiana and Arkansas Railway Company, had relinquished all claims to the special tax voted in its aid, and that the conditions on which it was voted were never complied with and the tax had lapsed; that the New Orleans, Natchez and Fort Scott Railway Company was consolidated with the New Orleans and North Western Railway Company, of Mississippi, and that, by special consolidation, which was in December, 1889, all the rights, credits, subsidies and properties of the New Orleans, Natchez and Fort Scott Railway Company, were transferred and became the property of the consolidated company, the New Orleans and North Western Railway Company; that under the conditions of the ordinance should the election held in January, 1890, be held illegal or invalid, and that, thereunder, the special tax voted thereat could not be legally levied and collected, then the levy and collection of said special tax was legal and valid under the ordinance adopted in November, 1886, in aid of the New Orleans, Natchez and Fort Scott Railway Company. They urged again the estoppel which they had set up in the exceptions, and averred and maintained the legality and validity of the ordinance submitting the question of the levying the special tax to the property

tax-payers of Richland parish, the legality and validity of the election and of all the proceedings taken thereafter relative to the tax. They prayed for a dissolution of the injunction with damages and the dismissal of plaintiff's suit. In the petition of the intervening company it was declared to be a corporation organized and existing under the laws of the States of Louisiana and Mississippi. In the petition of intervention it was alleged that the intervening company had an interest in the suit and a right to intervene therein as owner of the special tax voted in its aid and assailed by the plaintiff.

The intervenor pleaded that the court was without jurisdiction to entertain and determine a contest of the special election, there being no warrant in law or statutory authority for the same; that if it had jurisdiction the contest was filed too late, having been filed long after the ordinance had been promulgated as carried, after a large expenditure of money in constructing the road and after the construction thereof in compliance with the ordinance and on the faith of said vote, promulgation and levy; that plaintiff was estopped from contesting the authority of the Police Jury to order the election by having participated in and voted at said election and for the same reason was estopped from urging the other grounds set up; that the plaintiff company was aware prior to the election that non-residents, married women, minors and persons acting in a fiduciary capacity would vote thereat, but raised no objection thereto, and, as stated, had itself voted at the same. Intervenor excepted that plaintiff had no cause or right of action. It adopted, generally, the defendant's defense in favor of the legality of the election and of the tax.

Intervenor averred that the special tax voted for, was legal and constitutional, even if at the time it was so voted a special tax of five mills for ten years had already been voted by the property tax-payers of Richland parish in aid of the Louisiana and Arkansas Railroad or other railroad corporations. It averred that the New Orleans, Natchez and Fort Scott Railroad Company, was a railway corporation organized under the laws of Louisiana and was consolidated with the New Orleans and North Western Railway Company, organized under the laws of the State of Mississippi and under the laws of the State of Louisiana and Mississippi—the consolidated company taking the name of the New Orleans and North Western Railway Company; that the consolidation was effected in December, 1889, and by the act of consolidation, the consolidated company became the owner and

possessor of the assets, rights, credits, properties and subsidies of the New Orleans, Natchez and Fort Scott Railway Company, including the grant and subsidy of the special five mill tax voted for in favor of that company, in November, 1886; that the right was reserved to intervenor under said ordinance, to claim and demand the special tax voted in favor of the said railroad company, in the event the ordinance submitted to be voted upon, in January, 1890, was not carried, or was held not to be carried; that intervenor availed itself of such a stipulation and it contingently claimed the benefit of the tax voted for in 1886.

Intervenor averred that at the time of the submitting to a vote in January, 1890, of the question of the levying of the tax involved in the pending litigation, the Louisiana and Arkansas Railway Company had released and relinquished all claim to the special tax voted in its aid; that said tax was not earned and had long since lapsed.

It averred that the special tax of 1890 was voted for, was promulgated as carried, was levied, and with the exception of a few delinquents had been collected for 1890.

It averred that on the faith of said vote and levy and on the silence and acquiescence of plaintiff and others in the result, said road was constructed in compliance with the conditions of the ordinance, entailing a large outlay of money which had benefited plaintiff and other tax-payers. Plaintiff standing by and remaining silent until said corporation constructed the railroad and expended large sums of money on the faith of said special election, was estopped from contesting the same. It maintained the legality and validity of the ordinance and all proceedings taken thereunder, and of the tax and proceedings taken in aid thereof.

A statement of facts and note of evidence appear in the record signed by the attorneys of the different parties from which the following extract is made:

## STATEMENT OF FACTS AND NOTE OF EVIDENCE.

\*     \*     \*     \*     \*     \*

3. It is further agreed that the relinquishment signed by Hallow M. Hoyt, as president of the Louisiana & Arkansas Railroad Company, and on file in the record of the Police Jury, be filed and introduced in evidence.

4. It is agreed and admitted that the Louisiana & Arkansas Railroad Company has not complied with the provisions of the ordinance submitted and voted on by the people for a special tax in its favor; that said road has not been built or completed, and that said tax has not been earned under the provisions of the ordinance, and, that the right to said tax has lapsed and the same has been forfeited by the said railroad company.

5. That the New Orleans, Natchez and Fort Scott Railroad Company, was created and organized in August, 1886; that the special tax as declared in petition of plaintiff was declared, as voted in its favor by the authorities of Richland parish; that subsequently, to-wit, on December 26th and 27th, 1889, the New Orleans, Natchez and Fort Scott Railroad Company, a railway organization, a corporation of Louisiana, and the New Orleans and North Western Railway Company, a corporation of Mississippi, were duly incorporated under and in pursuance of the laws of the States of Louisiana and Mississippi, as per Act of constitution filed herewith, and made a part hereof.

6. It is further agreed and admitted that the New Orleans and North Western Railway Company, as thus consolidated, was placed in the hands of Charles H. Hammett and W. G. Jenkins, as receivers, on August 29th, 1891, by the order of the United States Circuit Court for the Fifth Circuit and Southern District of Mississippi, and Western District of Louisiana, Honorable Don A. Pardee, Judge, the said order placing the receivers in possession of all the property, effects or rights of said company, including any and all franchises, rights, immunities, donations, subsidies, etc.; that said receivers qualified and took possession of all of said property, and that they and their successors have since proceeded with the collection of said subsidies and taxes now in contest, as well as all others; that on October 23rd, 1892, the said Charles H. Hammett and W. G. Jenkins resigned as receivers of the said railway company, and Louis K. Hyde was appointed sole receiver of said company, and all its rights, property, franchises, subsidies, etc., and has since been enforcing the collection of said tax or subsidy in contest as well as all others, and has been in the possession and operation of said railway company, and all its property.

7. It is further agreed and admitted that at the election on January 14th, 1890, for a special tax of five mills for the period of ten years under the ordinance as introduced, the Vicksburg, Shreveport and Pacific Railroad Company voted against said tax.

8. It is further agreed and admitted that the line of the New Orleans and North Western Railway Company was projected and located through the parish of Richland, down to Rayville and on the line indicated by said ordinance, by reason of the inducement held out by the voting and promulgation of said taxes having been carried by the property tax-payers of Richland parish, and that said railroad company, its projectors, stock holders and incorporators expended previously to the filing of the injunction herein a sum exceeding one million of dollars in the construction and equipment of said railroad on said line.

9. That the said railroad company was completed and in operation before January 1st, 1891, and the conditions of said ordinance voted for at said election were complied with by said company.

The district court rendered judgment against the plaintiff in favor of the defendants, ordering, adjudging and decreeing that the injunction sued out in the action be dissolved, at costs of plaintiffs, with right reserved to defendants and intervenors to sue for such damages as might have been caused thereby, and ordering the officers to proceed to the collection of the taxes enjoined in such manner as the law directs.

Plaintiff appealed.

OPINION.

It is stated in plaintiff's brief that the only issue for decision now before the court is the legality of the tax of five mills in favor of the New Orleans and North Western Railroad Company, for ten years, all other matters having been disposed of and settled.

It will be noticed that the present action was instituted long after the result of the election at which the question of the imposition of the tax referred to had been submitted to the property tax-payers of Richland had been promulgated, and by the official announcement the tax had been declared to have been carried.

It was only after the tax had been levied and its property had been advertised for sale in enforcement of the portion of the tax assessed to it that plaintiff called in question either the ordinance by which the matter of the tax was referred to the people, or the subsequent proceedings. When it did take action it was in its own special interest, as the relief prayed for was an injunction against the sale of its property and the enforcement of the tax against it, and in aid of that

relief that a judgment be rendered, decreeing the said tax levied by the Police Jury unconstitutional, illegal, null and void, as well as all the proceedings of the police jury tending to said levy and the election thereof.

The action from the manner and form in which it was brought, the purposes for which, and the time at which it was instituted, and the parties against whom it was directed, constituted it a collateral attack upon the action of the parish authorities and the proceedings connected therewith in the matter of the tax. The parish authorities had, at the time, performed all of the duties connected with the subject matter other than that of receiving and distributing the tax. The plaintiff contends that the issues which its pleadings raise and the objections which it urges are much broader than those involved in State vs. Judge, 13th Ann., 89; State ex rel. Woodruff vs. Police Jury of Bossier, 41st Ann., 849; Davis vs. Police Jury, 43rd Ann., 1012; Construction Company vs. Police Jury, 44th Ann., 865; Tax-Payers vs. Tax Collector, 49th Ann., 1041, in which the defendants urged that this court had declared that in the absence of statutory authorization the courts of Louisiana were without jurisdiction, *ratione materiae,* to investigate and declare what were legal and illegal votes, to canvass the votes and declare the result in matters connected with contested elections, and could only extend where statutory authorization had been, in fact, given to the cases provided for by the statutes. Plaintiff maintains that it not only contests the validity and result of the election ordered by the Police Jury of Richland, but also the jurisdiction and power of that body to have submitted, at all, the question of the tax to the people, for the reason that the parish authorities were only authorized to act when a petition had been presented to them such as the law provided for, and that no such petition was presented in this particular matter to the Police Jury of Richland.

It further maintains that even if the court was without jurisdiction in those matters when the cause was first filed, its jurisdiction had been widened by Act No. 106 of 1892, and it had authority to deal with the whole subject matter when the case went to trial. While by Article 209 of the Constitution of 1879, a limitation was placed upon the rate of State, parish and municipal taxation, the power was given by Article 242 of the same instrument to the General Assembly to enact general laws, authorizing the parochial or municipal authorities of the State, under certain circumstances, by a vote of the majority of

the property tax-payers in number and in value, to levy special taxes
in aid of public improvements, or railway enterprises, provided that
such tax shall not exceed the rate of five mills *per annum*, not to ex-
tend for a longer period than ten years.

In order to make operative the right or power of *quasi* voluntary
taxation here recognized or granted, it was necessary that the partic-
ular circumstances under which it should be permitted to find expres-
sion should be declared by the legislature, and the mode or method by
which the will of the people should be tested and ascertained and an-
nounced, be fixed. Act No. 35 of 1886 was enacted for that purpose.
It is true that the initial step provided for by the General Assembly
to be taken, looking to the submission to the people of a parish of the
question whether a particular special railroad tax should be imposed
or not was the presentation to the parochial authorities, of a petition
of a certain number of property-owners, and, therefore, in one sense,
it might be said that upon the existence of that very fact depended
the jurisdiction of that body. The legislature, however, while thus
declaring the circumstances under which the power was to be called
into action gave none the less the parochial authorities the power and
authority to deal with the subject matter of the petition so presented.
It could not, of course, originate of itself, and independently of re-
quest from the property holders a special election for the purpose
stated, but when a petition came before it, requesting action, it was
necessarily vested with the power and authority for the purpose of
guiding its own course to determine whether it was of the required
character.

The power to judge given to a particular body or tribunal, carries
with it the power to judge wrongly as well as rightly (State *ex rel.*
Babin vs. Judge, 49th Ann., 1730), and an erroneous judgment or con-
clusion would, by no means, necessarily carry with it the absolute
nullity of action taken upon such erroneous judgment. When a su-
perior body or tribunal had been provided for, vested with the au-
thority to supervise or review such action by appeal, or otherwise, this
action might be set aside or annulled. Where no such superior au-
thority had been provided for and the body or tribunal had been left
to be itself the final tribunal, it has been held in several jurisdictions,
in reference to this very matter, if we are not mistaken, that courts
will take the conclusion reached to have been correctly reached, at
least, as against a collateral attack. We have illustrations of this

same principle in the case of courts of limited jurisdiction, where the jurisdiction is dependent upon the values of the property or matters in dispute before them, and they have passed, as matters of fact, upon the question of such values. As matters stand now and since the passage of Act No. 106 of 1892, the legislature has provided for contests upon this subject and fixed the terms and conditions of the same, and one of the requirements of the contest is the fact that it should have been instituted within a given fixed time.

Any railroad corporation, therefore, in whose favor a special tax has been declared to have been voted is now advised of the danger of acting upon the strength and faith of such announcement and should it proceed to the expenditure of money and the construction of its road before the period when such contest can be raised, it does so prematurely and at its own peril.

Matters were different before the passage of the Act of 1892. There was no period fixed to guide the corporation as to its safety or its risk.

Conceding that property-owners had, prior to the Act of 1892, the power to test the question whether the petition presented to the Police Jury was insufficient or not, it was clearly the duty of parties possessing such right to do so in a timely manner—in a reasonable time.

They could not, with any justice, stand in the background until the corporation should, on the strength and faith of the announced vote, have completed its work by the expenditure of its money and then raising objections, realize benefit and repudiate obligations. Particularly is this the case where the contest is raised, not as a property owner for the benefit of the mass of the property owners, but for the special benefit of the party making the contest. A person or corporation should not be permitted to reap advantages for which his neighbors, and not himself, are called to contribute. In the case at bar the plaintiff not only did not raise objections in reasonable time, but it participated and voted at the election which the Police Jury had ordered, and in so doing, recognized apparently, at least, the correctness and regularity, up to that point, of the proceedings taken. It is true that it voted adversely to the tax, and that that fact might relieve it from estoppel "as against the contesting of the result of the election", but it would not relieve the course pursued by it from evidencing its recognition apparently of the legal exercise by the Police Jury of its authority in ordering the election itself. Tardy action coupled with

acquiescence on the part of plaintiff has, in our opinion, worked an estoppel as against its raising that particular issue.

The contention of the plaintiff might be conceded that it was within the constitutional power of the General Assembly by the Act of 1892, to have extended the jurisdiction of courts and to have widened the right of property owners as to contests touching special elections in aid of railroad enterprises and to have made its provision apply retroactively to the issues already raised in suits pending before the passage of the Act without affecting the present litigation, for the question here is not one of power but of intention.

The provisions of that Act have to be all considered, and it is very evident from the particular provision as to the time when contests shall be brought, considered relatively to the promulgation of the returns of election, that it was the intention of the legislature to withdraw from the operation of the act any contest where that provision could not apply.

The claim of the plaintiff that the tax enjoined can not be legally enforced for the reason that the property owners of Richland parish had already voted a special tax of five mills *per annum* for ten years in favor of the Louisiana and Arkansas Railroad, loses its force under the admissions in the record, that the benefit of that tax had been released and relinquished by that corporation, and it had lapsed by failure of performance of the conditions upon which it was to be exigible. (See on this subject, Reynolds & Henry Construction Company vs. Police Jury, 44th Ann., 863.)

The claim that a double enforceable tax of five mills for ten years has been voted in favor of the New Orleans, Natchez and Fort Scott Railroad Company, or the New Orleans & North Western Railroad Company, is without foundation. Only one tax has been, in reality voted, though two elections were held upon the same subject.

The object of the second election was to make certain that one tax of five mills in favor of the corporation should be imposed and to remove all doubts upon the legality of the imposition of the tax. It seems that doubts had been expressed as to the binding force of the original vote, and it was to cure the defects, if any, of that vote, or to replace the first proceedings by those secondly taken (if necessary) that the last election was ordered and took place.

It might be said that a tax of five mills in favor of the corporation was twice acted upon favorably, but, none-the-less, one satisfaction or

enforcement would exhaust the tax voted for. It frequently happens that there are two judgments for the same debt where the satisfaction of one carries with it the extinguishment of the other.

The real situation was simply that the second election was held under reservation by the corporation of any rights which it might have acquired under the first election should the second result be adverse to it. What the effect of this reservation would have been had the second election resulted in fact adversely to the corporation, we need not discuss.

We think that the tax voted for enured to the benefit of the intervening company by the consolidation of the New Orleans, Natchez and Fort Scott Railroad Company with the New Orleans and North Western Railroad Company.

The object sought to be attained through the tax was the construction of the road—the fact that the New Orleans, Natchez and Fort Scott Railroad was merged by consolidation with the other company carried with it no significance as to the legality and enforcibility of the tax.

We are of the opinion that the judgment appealed from is correct and it is hereby affirmed.