(56 South. 625.)

No. 18,377.

LAWSON et al. v. OPELOUSAS, G. & N. E. R. CO.

(June 5, 1911. On Rehearing, Nov. 27, 1911.)

*(Syllabus by the Court.)*

1. COURTS (§ 37*)—JURISDICTION OF THE PERSON—WAIVER OF OBJECTION.

Where a suit is brought against a municipal corporation, the tax collector, and a railroad company to annul the levy by the corporation of a special tax in favor of the railroad company and to enjoin the collection of the same, and the company, having its domicile in another parish, pleads to the jurisdiction, alleging that the court of its parish "has exclusive jurisdiction of the causes of action set forth in the plaintiffs' petition," it thereby invokes the action of the court quoad the subject-matter presented in the petition and acquiesces in the exercise of jurisdiction ratione personæ.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–151; Dec. Dig. § 37.*]

2. MUNICIPAL CORPORATIONS (§ 987*)—TAX IN AID OF RAILROAD—ESTOPPEL TO DENY VALIDITY.

The estoppel against property taxpayers, with respect to the contesting of a special tax, which may result from their petitioning for an election, voting for the tax, and paying it, and from their enjoyment of the fruits of their offer or promise of such tax, has no basis to rest on when the condition upon which the tax was voted is not complied with and the tax has not been earned.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 987.*]

3. RAILROADS (§ 35*)—PUBLIC AID—COMPLIANCE WITH CONDITIONS—ESTOPPEL TO DENY VALIDITY OF TAX.

Where a special tax election is ordered upon a petition representing that the petitioners' desire to vote a tax in aid of a projected railroad, which is to run by a certain route to the town in which the petitioners live, and the road, as thereafter constructed, runs upon another route, to the prejudice of the petitioners' town and the advantage of a rival town, the condition on which the tax was voted is not complied with, and the tax is not earned, and its levy will be annulled and its collection enjoined.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 35.*]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by W. E. Lawson and others against the Opelousas, Gulf & Northeastern Railroad Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Lewis & Lewis, for appellant. Joseph G. Medlenka and Story & Pugh, for appellees. R. E. Milling, R. C. Milling, and Caffery, Quintero, Gidiere & Brumby, amici curiæ.

MONROE, J. This is a suit by three citizens and taxpayers of Crowley, in the parish of Acadia, against the city of Crowley, the tax collector, and the Opelousas, Gulf & Northeastern Railway Company to annul the levy, and enjoin the collection, of a special tax, said to have been voted by the property taxpayers of the city at an election held on May 22, 1905, and to have been levied by an ordinance of the city council adopted July 19, 1909; the cause of action set forth being that the election was not carried by a majority in number and amount of the taxpayers entitled to vote, and that Act No. 202 of 1898, under which the election was held, is unconstitutional, in that it purports to authorize such elections to be carried by a majority in number and assessed valuation of those participating therein, and that, even if the election were valid, the condition upon which the tax was voted has not been complied with, and the tax has not been earned.

Defendant (railway company) pleaded to the jurisdiction of the court, pleaded the prescription of three months as against the attack upon the election, and pleaded estoppel, and, those pleas having been overruled, answered, alleging compliance on its part with the condition on which the tax was voted, and claiming damages for the alleged wrongful issuance of the injunction restraining the collection of the same.

[1] 1. If in its plea to the jurisdiction defendant had confined itself to the question of the right of the plaintiffs to compel it to litigate before the court of a parish other than that of its domicile, its position would be stronger, but in making its plea it undertook

to invoke the action of the court upon the question of its jurisdiction quoad the subject-matter propounded in the petition, alleging that the district court of St. Landry "has exclusive jurisdiction of the causes of action set forth in plaintiffs' petition," which is a plea to the jurisdiction ratione materiæ, and an acquiescence in the jurisdiction ratione personæ. If, however, the railway company had been eliminated, the case must have gone on against the city of Crowley and the sheriff (and ex officio tax collector), since plaintiffs are complaining of things which those defendants are doing in the parish of Acadia, to their (plaintiffs') injury, and they cannot be compelled to answer in another parish for official acts committed in the parish where the law has established them. The plea to the jurisdiction was therefore properly overruled.

[2] 2. With regard to defendants' plea of estoppel, there can be no doubt that where taxpayers in a community, by their petition and votes, offer a special tax to a railroad company as an inducement to the construction of a particular railroad, and the offer is accepted and the road built, in accordance with the terms of the offer, and to the profit and advantage of those by whom it was made, they ought not to be heard to object to the payment of the tax, and the same thing may, perhaps, be said with regard to taxpayers who, whilst neither petitioning nor voting for the tax, derive the same advantage from the road as those by whom the tax was voted, acquiesce in the levy of the same, and, year after year, pay it, thereby ratifying and affirming the action taken by their fellow citizens. Andrus v. Board of Police, 41 La. Ann. 697, 6 South. 603, 5 L. R. A. 681, 17 Am. St. Rep. 411; Dupre v. Board of Police, 42 La. Ann. 802, 8 South. 593; Railroad Co. v. Sheriff, 52 La. Ann. 512, 27 South. 137; Arkansas So. R. Co. v. Wilson, 118 La. 399, 42 South. 976.

But it remains to be seen whether the case here presented falls within the doctrine stated. Two of the plaintiffs before the court, Lawson and Lewis, petitioned for the election, voted for the tax, and paid it for the year 1908. We may say, however, that we attach no importance to the payment, considered by itself, as each of them paid his taxes in a lump, and the best evidence that the railroad tax did not attract attention is to be found in the fact that no such tax was levied for the year 1908, the ordinance levying the tax having been adopted in July, 1909, and making the levy for 10 years, beginning with that year. Moreover, the plaintiffs named very soon brought suit for the recovery of the amounts paid by them, which suit, as we understand, is now pending. The third plaintiff, McAyeal, has opposed the tax from the beginning, and, with respect to all of them, it will be remembered that one of their grounds of action is that the condition upon which the tax was voted has not been fulfilled; in other words, that the road, for the building of which the tax was voted, has not been built, which defense, if sustained, will leave nothing for the plea of estoppel to rest on. It may also be said with regard to defendants' plea of prescription against the attack upon the legality of the election that, whether good or bad, it cannot affect the question of plaintiffs' liability for the tax, if the defendant railroad company, apart from any legal or technical objections thereto, has not earned the tax by building the road for which it was voted. We shall therefore pretermit the further consideration of the pleas mentioned and address ourselves to what may be called the merits of the case.

[3] The petition of the property taxpayers reads, in part, as follows:

"To the Mayor and Board of Aldermen of the Town of Crowley: * * * The undersigned, * * * comprising more than one-third of the qualified voters and property taxpayers, * * *

respectfully request your honorable body to order an election (as provided by Act No. 202 of * * * 1898, and in accordance with article 270 of the state Constitution) in said town to take the sense of the legally qualified voters whether your honorable body shall levy a 5-mill tax for a period of 10 years to raise a fund * * * of $70,000 * * * to aid in the construction of the Opelousas, Gulf & Northeastern Railroad, a road projected by the Opelousas, Gulf & Northeastern Railroad Company, and by which it is proposed to connect Opelousas with some line of railway traversing the eastern portion of the parish of St. Landry and entering New Orleans and paralleling the Mississippi river; *and constructing and extending said line from Opelousas in a southwesterly direction, intersecting and crossing the Louisiana Western Railroad Company (sic.) at Crowley and extending thence to deep water on the Gulf,* said tax to be levied, collected, and paid over to said company subject to the conditions herein stated: First. The said tax shall only be levied and collected after the line of railway projected by the said railway company shall be completed and in running order from the point of its intersection with some other railroad paralleling the Mississippi and entering New Orleans to the town of Crowley." (Italics by the court.)

In compliance with the prayer of the petition, the council adopted an ordinance, the preamble of which recites the fact that the petition had been presented, and which then proceeds to order the election, and makes provision therefor. Section 8 of the ordinance reads:

"Be it further ordained: That this ordinance, together with the petition of the property taxpayers and qualified electors of the city of Crowley, be published in the official journal for the full period of thirty days preceding the election."

The impression and belief upon which the petition and ordinance were predicated was that the road would run in a general southwesterly direction from Opelousas, and almost due southwest, through Church Point, Branch and Roberts' Cove, straight to Crowley, where it would cross the Louisiana Western Railroad (which is part of the Southern Pacific System). Instead of that, the road, as built, runs southwest from Church Point to Branch, and thence south, to a point about two miles below Rayne, a town which lies some six miles to the eastward of Crowley, where it crosses the Louisiana Western, and

thence westward, to Crowley, all of which is approximately, though crudely, represented on the subjoined sketch:

A very highly valued and respected member of the bar of this court originated the enterprise, or, at all events, had charge of the matter in the beginning. It is, however, due to him to say that prior to the election he made it known that he was strongly in favor of building the road, as it has been built, due south, from Branch to Rayne or below Rayne, and thence westward to Crowley. But the knowledge, whatever may have been its extent, of his views upon the subject, does not appear to have shaken the conviction of the Crowley people, or, at least, of a number of them who have testified in this case, that the road would be built as originally proposed. In fact, on May 19th, only three days before the election, an article appeared in the "Crowley Signal," in which it was said that "Judge Williamson," who represented Northern capitalists who were supporting the enterprise, had been in

the city, and had conferred with those in charge, and that he had made a' statement, which forms part of the article, and reads, in part:

"I have been over the ground thoroughly, in company with competent engineers, and, on my return to New York, will recommend the construction of a road from Melville, through Opelousas, to Crowley, and, probably, thence, to Abbeville. Our ultimate destination is New Orleans. Surveyors are now at work running the line. The surveying party camped last night in Roberts' Cove, eight miles from Crowley. The construction of the road will begin within a few weeks and it will be completed inside of eighteen months." * *. * "The question of voting a five-mill tax by the corporation [this, as we understand, by the editor] for a period of ten years will be decided on the 22d of this month. It is 'now believed that the proposed line will run direct from Church Point, through Branch, to Crowley, without striking Rayne, although Judge Lewis is strongly in favor of the Rayne route. Judge Williamson left for New Orleans on the night train."

The election was held at Rayne on the same day as at Crowley (May 22d), and on the following day the newspaper above quoted contained an article referring to the large vote that had been given, and saying, among other things:

"This means, pretty definitely, that the road will be built from Church Point, south, via Rayne, to Crowley."

Mr. Genung, who was defendants' superintendent of construction and engineer, being asked by defendants' counsel:

"Q. As an engineer of the road did you ever receive any instructions in regard to running to Crowley, and thence to Rayne?" replied (over objection): "A. No, sir. I might add, to my certain knowledge, there was never any location made, except on the line adopted. There was a preliminary run that missed Rayne. They always do that to make them come in when asking a bonus, and, if there was any such as you speak of, there is not a sign of a record of it in my office."

The petition of the Rayne taxpayers refers to a projected road from Opelousas in a southwesterly direction, "intersecting and crossing the Louisiana Western Railroad at, or near, Rayne or Crowley, and extending, thence, to deep water on the Gulf," etc.

The Crowley petition, as we have seen, refers to a projected road "from Opelousas, in a southwesterly direction, intersecting and crossing the Louisiana Western Railroad Company at Crowley, and extending thence to deep water on the Gulf," etc.

Crowley and Rayne are rival towns, and the evidence satisfies us that the deflection of the line upon which the road was built from the route mentioned in the Crowley petition operates to the prejudice of Crowley and the advantage of Rayne, which is somewhat hard upon . Crowley, whose taxpayers voted $70,000 to the road, as against $20,000, voted by the taxpayers of Rayne. We therefore conclude that as to Crowley the defendant has failed to comply with the condition upon which the tax was voted, and is not entitled to it.

It is said that plaintiffs, or two of them, are estopped by reason of the fact that after the line of the road was located, and it was definitely known that the road would run, first, to Rayne, they contributed money for the purchase of a site for the depot in Crowley. There were, however, other interests involved in that matter which have no bearing here.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it overrules the plea to jurisdiction, holds that the defendant company did not comply with its contract with the taxpayers of the city of Crowley, annuls the tax levy complained of, and perpetually enjoins the enforcement of the same, be, and the same is hereby, affirmed.

On Rehearing.

PROVOSTY, J. The contention is made that the running of the defendant's railroad "in a southwesterly direction, intersecting and crossing the Louisiana Western Railroad at Crowley," was not one of the conditions upon which the tax was voted. The "conditions," it is said, are expressly stated in the petition of taxpayers, and this so-called

condition of the running of the line in a southwesterly direction and intersecting the Louisiana Western Railroad at Crowley is not to be found among them, but only in that part of the petition which may be called the preamble.

The answer to this is that the railway in aid of which the tax was asked to be voted was "the line of railway projected by the said company," and that "the line of railway projected by said company" was the one mentioned in the preamble, namely, a "line from Opelousas in a southwesterly direction, intersecting and crossing the Louisiana Western Railroad at Crowley." For this road, as thus projected, and for no other, the tax was voted.

Another question is as to whether the deflection of the line to Rayne, and the intersecting of the Louisiana Western Railroad at Rayne instead of at Crowley, were material changes. On that point our original opinion appears to us to be full, complete, and conclusive.

The estoppel has given this court somewhat more concern. Courts lend usually but a dull ear to taxpayers who seek to annul a tax upon the faith of which a public improvement, of the benefit of which they are now assured, has been constructed. But this is generally where a mere technicality is being relied on for avoiding payment of the tax, and where the beneficiary of the proposed tax has not had warning. In the present case considerable importance was attached before and at the time of the voting of the tax to this deviation of the line. The matter was publicly discussed, Crowley and Rayne being rival towns, and non constat that the vote in Crowley would not have gone different if this deviation had been announced as a certainty. The defendant company knew that importance was attached to this point, and seems to have taken the chances.

It is therefore ordered, adjudged, and decreed that the former judgment of this court herein be reinstated, and made the final judgment of this court.