No. 12,971.

MISSOURI, KANSAS & TEXAS TRUST CO. VS. M. N. SMART, AS SESSOR, ET ALS.

### SYLLABUS.

The police jury having canvassed and compiled the returns of an election, and proclaimed the result of same to have been in favor of the special tax in aid of a railway enterprise, and thereafter passed an ordinance levying the tax in accordance therewith, it is without legal capacity to subsequently pass another ordinance repealing the former one, and annulling the tax—the railway having been in the meanwhile completed and put in operation.

Having proclaimed the result, and levied the tax, the police jury is without interest or legal right, to defend a *mandamus* of relator to coerce the collection of the tax, upon grounds which can alone be asserted by taxpayers who had long since acquiesced in the election, as well as its result.

ON APPEAL from the Twelfth Judicial District Court for the Parish of Vernon. *Read, J.*

---

*T. Alexander* and *Pujo & Moss* for Plaintiffs, Appellants.

---

*J. Henry Shepherd* for Defendant, Appellee.

Argued and submitted January 26, 1899.
Opinion handed down February 20, 1899.

The opinion of the court was delivered by

WATKINS, J. This is an action to compel the assessor of the parish of Vernon to extend upon the parish tax rolls, the special five mill tax as levied by the police jury of that parish on the 6th of December, 1895, in aid of the Kansas City, Shreveport and Gulf Railway Company; and, also, against the sheriff and ex-officio tax collector, to compel him to collect said tax according to law, same being accompanied by *mandamus*.

The police jury was made a defendant for the purpose of enabling the plaintiff to make proof, if necessary, of its full compliance with the requirements of the ordinance levying the tax which was conditioned upon the completion of the railroad and putting it in operation within a certain time.

The assessor answered, denying that he had any power to assess and levy the tax; the sheriff answered denying that he had any power to collect the tax; and the police jury answered, asserting the legality and validity of the ordinance they had adopted purporting to repeal the ordinance levying the special tax, and the illegality of the tax.

On the trial, there was judgment in favor of the defendants, and the plaintiff has appealed.

The substantial facts exhibited by the record which antedated the institution of this suit in July, 1898, are as follows, viz.:

That an agreement was made between a committee of tax-payers and the Kansas City, Shreveport and Gulf Railway Company, whereby a special tax of five mills for ten years was to be voted for, levied, and paid to said railroad company in consideration of the location, construction and operation of its line through said parish.

That upon the petition of a sufficient number of property tax payers of said parish, the police jury thereof ordered an election to be held in accordance with Act No. 35 of 1886, whereat was to be submitted the question of the levy of said special tax.

That, on the 6th of December, 1895, the police jury met and proceeded to canvass and compile the election returns; and they proclaimed, as the result of said election, that the tax had been voted for by a majority of the electors entitled to vote, both in number and amount.

That immediately thereafter, the police jury promulgated the aforesaid result of the election, and formally adopted an ordinance levying the tax of five mills on the dollar upon all the taxable property of the parish for a term of ten years, in aid of said railway company, the said tax to continue in force until the entire ten years tax shall have been collected and paid over to the railway company.

That the railway company located, constructed, operated, and is now operating its line of railway through the parish of Vernon, within the time, and in accordance with its contract, and the terms and provisions of the police jury ordinance.

That a stubborn resistance to this tax was made at the polls, and great dissatisfaction was produced by this result, and which eventuated in suit contesting the legality of the tax by a portion of the taxpayers; and, amongst others, was the ground alleged that frauds and irregularities had been perpetrated by election commissioners at certain polls; and, also, by the *police jury* in canvassing the returns, and in declaring the result of the election.

That the defense consisted of a denial of the plaintiff's charges, and a counter charge by the railroad company of frauds and illegal acts on the part of the petitioners, on account of which the apparent majority favoring the tax was largely reduced.

That propositions for a compromise of that litigation were submitted and accepted, the purport of which was the company should release and thereafter hold harmless against the payment of said special tax, all the members of the tax-resisting association; and a consent judgment to that effect was agreed to and signed, the proportion of the tax assessable against them aggregating only about ten *per cent* of the whole amount thereof.

That subsequent to said compromise, the police jury, on the 30th of March, 1898, passed an ordinance, in terms, repealing the prior ordinance of December 6th, 1895, levying said special tax.

It is to meet that exigency that this proceeding by *mandamus* was instituted; and it is apparent that the answers of the tax collector and assessor are predicated upon that alleged repealing ordinance.

And the answer of the police jury denying the legality of the tax is the attempted defense of the rights and interests of these property tax-payers who did *not* join in the aforesaid suit.

We make the following extracts from the brief of defendants' coun-

sel, which sets out very fully the substance of the answer of the police jury, viz.:

"E. E. Smart, president of the Police Jury, in response to the mandamus, avers that the relators filed in the office of the clerk of the parish of Vernon, an agreement by which relators released from the payment of the five mill tax for ten years, four hundred and sixty-nine tax-payers of Vernon parish, who claimed to have voted against said tax in a suit filed by these tax-payers seeking to annul the ordinance levying the tax, for the reason that a sufficient number of fraudulent votes were counted in favor of said tax to make a majority; there being but four hundred and sixty-three votes promulgated in favor of said tax, with four hundred and fifty against the tax, and that the agreement of release absolutely released four hundred and sixty-nine persons. Among those being released, were the very persons who were charged to have been counted for the tax, when in fact, thy had voted against the same. The president of the police jury in his answer avers that, by said release, relators destroyed the validity of the ordinance in their favor; that the number released being in excess of the number claimed to have voted for the tax, is a clear admission that said tax was not voted by a majority of the property tax-payers voting in said election. Respondent further avers that by reason of said public notice that there was no majority in favor of said tax, the police jury rightfully repealed said ordinance. Respondent further avers, that the police jury was no party to said compromise, in which a larger number of voters and tax-payers were released from the operation of said tax and presented with an honorarium of one thousand, five hundred dollars for attorney's fees. Respondent further avers by said act of compromise relators attempted to effectually prevent any further judicial inquiry into said election, and setting the same aside on the ground of false voting respondent further answers that a tax in aid of a railway is a solidary obligation, each voter casting his ballot for a tax on all the property in the parish and not on his individual property, and that he shall only pay a tax when a clear and clean majority of all qualified tax-payers, shall vote in favor of the same. Respondent further avers that a release of one is a release of all; that to now levy a tax of five mills on a portion of the property of Vernon parish for ten years will be to deny the people of Vernon parish the Constitutional guarantee, that taxation shall be equal and uniform; that a tax of five mills on only a portion of pro-

perty of like character in the parish of Vernon would impose an unjust and unequal burden, create a favored class of citizens; will destroy the equality and uniformity for taxing purposes by the State and parish; will create a condition of affairs in matters of taxation in said parish, repugnant to good morals and conscience; and the law cannot enforce such a partial method of dealing with the citizens of the same territorial jurisdiction and create invidious discrimination by the law.

"Respondent annexes and makes part of his petition, the petition of the citizens and taxpayers against the railroad company and police jury, together with the answer and compromise agreement filed in the clerk's office, October 12, 1897. The petition of citizens and taxpayers of Vernon Parish vs. President of Police Jury of Vernon Parish *et als.* filed on February 27, 1896, within the legal time required by law, charges gross frauds against supervisors of said election and fraud in the canvass of the vote by the police jury. They especially set out that the commissioners, naming them, at Kirk's box, Precinct two, Ward two, fraudulently returned as voting for the tax the following legal qualified electors: Alfred Self, Enoch Self, J. J. Masters, Charles Martin, Lewis Martin. Your honors will find this direct charge in this petition, and on examination, your honors will further find that these self-same persons are relieved by the notarial release of the company. Their names appear in the roll of the redeemed for Ward two. The petition further charges that more than fifty ballots from which the word For was stricken, meaning, 'For the Tax,' were actually counted for the tax, when according to every rule of canvass these ballots should have either not been counted at all, or according to the intent of the voter, which most clearly means against the tax, for why should a voter desiring to vote for the tax, scratch out the very words which would most clearly express his intention?"

## I.

The first and most important question which arises is, whether a police jury, having canvassed and compiled the returns of an election in reference to a special tax in aid of the construction of a railway, and declared that said special tax had received the sanction of a majority of the votes cast, and officially promulgated the result thereof, and levied the tax, had the legal competency to pass a *subsequent*

ordinance, *ex propria motu*, repealing the one first enacted, and annulling the tax, long after the railway company had accepted the tax, completed its railroad and put same in operation.

In Construction Company vs. Police Jury, 44th An. 863, this question was considered and decided, and Mr. Justice Breaux, speaking for the court, said:

"The authority which ordered the election, on the petition of the tax-payers, which promulgated the returns and declared them adopted, and legal, assails the returns as null, and asks that a recount be made and the nullity decreed.

"The defendants are estopped.

"It proclaimed the regularity of this election, which resulted in the acceptance of a contract and the performance of work. It can not question the binding force of its own acts.

\*    \*    \*    \*    \*    \*    .   \*    \*    \*    \*    \*    \*

"The repeal of the Ordinance 634, adopted for the levy of a special tax, is without effect."

In State *ex rel* Construction Co. vs. Tax Collector, 48th An. 28, the court, speaking through the Chief Justice as its organ, said:

"The question is, whether, after having exercised the power or "duty entrusted to it, it can subsequently reverse its action and stay "proceedings, because it may suppose that its duty was incorrectly "performed. We do not think it was charged with the duty of cor-"recting its own mistakes, if mistakes it made. There would be no "end of litigation if such a doctrine were true. When the Council "levied the tax it was ordered to levy, the subject matter passed out of "its hands. It had no further legal interest in the premises. It had "performed the specific duty imposed upon it, and its connection with "the levying of the tax ceased. Darcantel vs. Slaughterhouse Co., 44 "An. 644."

In our opinion, the principle announced in those decisions is correct, and they meet our approval and concurrence; and being applied to the instant case, are conclusively against the legality of the alleged repealing ordinance. It has no power or efficacy to bind the assessor and tax collector in the collection of said special tax, and we decline to give same any effect.

## II.

Applying the principle announced in the preceding paragraph to

the respective contentions of the tax collector and assessor, they must be deemed and held groundless for the same reason.

For the police jury ordinance levying the tax remaining in force, those officers plainly come within the power and scope of the plaintiffs' writ of *mandamus*.

Their demands are, therefore, rejected.

### III.

The substance of the contentions of the police jury appears to be an assault upon the special election, on the ground that same is and was illegal, null and void, because of certain alleged frauds and irregularities in the proceedings leading up to said election, and in the management and conduct thereof, but all of which, necessarily, antedated their examination and tabulation of the election returns; and their official proclamation that the election had been duly and regularly carried in favor of the tax. And it is obvious that their official proclamation of the result of the election, preceded the adoption by them of an ordinance levying the special tax.

Their averment is that, subsequently to said proclamation and ordinance, quite a large number of the property taxpayers of the parish entered a suit, within the time prescribed by law, contesting said election upon various grounds, but that during the pendency thereof, a compromise of same was effected between the parties litigant, the suit dismissed, and judgment entered therein.

That, notwithstanding, the plaintiffs in that suit represented less than ten *per cent.* of said special tax, and that the railroad had been intermediately constructed and put in operation, the police jury—who were made merely nominal parties defendant—set up as a defense to the collection of the tax, the illegality of the election which they had officially declared legal and valid, and long after they had passed an ordinance levying the said tax.

More particularly stated, their grounds of resistance may be summarized as follows, viz.:

First—That relator, as one of the stipulations of the compromise, agreed to release from the payment of the tax, during the entire ten year period of its duration, all of the plaintiffs in the aforesaid suit; and that among those released were many of those who were charged to have been counted for the tax, when, in fact, they voted against the same.

Second—That by said release of said plaintiffs, more than four hundred in number, relator destroyed the validity of the ordinance of the police jury which levied the tax in its favor—the number released being greater than the number claimed to have voted for the tax, thus leaving subject to the payment thereof less than a majority in *number* of those voting at the election.

Third—That a tax in aid of a railway is a solidary obligation, each voter casting his ballot for a tax on all the property in the parish, and not on his individual property, and upon the condition that a majority of the property taxpayers shall vote in favor of the same; and that, consequently, the release of one, is the release of all.

Fourth—That by this release of the property of the parish the ordinance will be deemed to have violated the constitutional guarantee that taxation shall be equal and uniform; and that a tax of five mills on only a *portion* of the property of the parish would impose an unjust and unequal burden, create a favored class of citizens, and destroy the equality and uniformity of the tax, and create an invidious distinction among taxpayers not authorized or contemplated by law.

But, in stating these defenses, the police jury are confronted with the indisputable fact that the plaintiffs in that suit were the *only* taxpayers of the parish who resisted the payment of the tax in the manner and within the time prescribed by law; and those who did *not* join in that suit are conclusively presumed to have acquiesced in the result of the election as it was officially proclaimed by its ordinance, and can not now be heard to complain in a court of justice.

That it having canvassed and compiled the returns of the election, and made due proclamation that the tax had been voted for and carried by a majority of the votes legally cast, has no better right or greater power to ask a court of justice to render a judgment contrary thereto, than it had to pass an ordinance repealing their prior ordinance, levying a tax in pursuance of their proclamation.

We are bound to accept, as the initial point from which to consider and decide this case, the proclamation by the police jury, that the election had been carried for the tax, and their ordinance levying the tax.

That matter has been finally and irrevocably settled, in the manner the law has directed, and can not now be reopened and reviewed at the behest of the police jury, in the interest of that portion of the

taxpaying inhabitants who failed to make protest seasonably for themselves, and particularly at a time long subsequent to the relator's acceptance of the tax, and the construction of the road and putting same in full and complete operation.

In any view that can be taken of the *present* contentions of the police jury, the relator's release of a portion of the citizens from the payment of the tax, after it had been actually levied, could have no bearing on the legality of the election; nor could it affect the uniformity of the tax, or increase or diminish the burdens of those who were not released.

The tax once *in esse* became incontestible and certain, and a release of some of the taxpayers from the payment of it does not cause an increase in the rate of taxation due by others.

The constitutional question sought to be raised by the police jury is without any foundation in law or jurisprudence.

"Constitutional provisions that all taxes shall be equal and uniform "apply only to general taxation, and have no application to local "assessments. Am. and Eng. Ency. of Law, Vol. 25, p. 495."

The provisions of the Constitution that "taxation shall be equal and uniform throughout the State" does not apply to, or preclude local assessments or special taxes levied in pursuance of special provisions of law, in aid of public improvements. Cooley on Taxation, p. 438.

In support of that proposition, that author cites the following decisions of this court, viz: Municipality vs. Dunn, 10 An. 57; New Orleans vs. Elliot, 10 An. 59; Yeatman vs. Crandall, 11 An. 220; Drainage Co. Case, 11 An. 388; State vs. New Orleans, 15 An. 354; See also Munson vs. Board of Commissioners, 43 An. 15.

"It is only when *statutes* impose taxes on false and unjust principles, or which operate to produce gross inequality, that courts can declare them void." People vs. Bank, 5 Allen, 428; Warren vs. Henly, 31 Iowa, 31; Howel vs. Bristol, 8 Bush, 493; Turner vs. Althans, 6 Nebraska, 54; State vs. Railroad Co., 40 Md., 22; Beck vs. Miller, 19 Fed. Rep., 377.

"The want of uniformity must be the *direct result of the law itself,* and not the maladministration of a proper law." 25 Am. and Eng. Enc. of Law, p. 88. Citing: Mortgage Co. vs. School District, 21 Fed. Rep., 151; Cummings vs. Bank, 101 U. S., 153; State vs. Maxwell, 27 An., 723.

In that last case, the court very pertinently said:

"This question was decided in the case of Harrison vs. Tax Collector, "26 An., 699, in which the court said: 'While the exempting of the "property in contravention of the Constitution may be void, the levy-"ing of the tax is constitutional. * * * There is, then, no in-"equality of which the plaintiff can complain.' We adhere to the opinion then expressed. We can not perceive how a taxpayer can justly complain that the *levying* of a tax is unequal, because some property in this State has been omitted in the assessment, either through inadvertence, or because it is supposed to be exempted by an unconstitutional law, for the effect would be the same.

"We imagine that there never has been an assessment which "embraced all the property of the State, but that fact did not render "the assessment unconstitutional."

The constitutional requirement, that taxation shall be equal and uniform, applies to the levy and not the method of collecting the tax. 25 Am. and Eng. Enc. of Law, p. 57.

"Although an exemption from taxation may be illegal, such a "trifling exemption would not necessarily invalidate the whole ordin-"ance which levies the tax, unless it could be shown that, by reason of "such exemption, the taxes on the property had been increased." Am. and Eng. Corp. Cases, Vol. 43, 330.

" 'It is an interesting question; what is the effect of an illegal "exemption of property from taxation upon the validity of the general "assessment, and the answer to that question depends upon the effect "of such illegal exemption upon the rate or amount of taxation, which "is assessed upon the other beyond what would be assessed upon it, if "there had not been an illegal exemption. The mere omission by "an assessor of certain property from his assessment list, without "authority of law, will not invalidate the entire assessment, as long "as the illegal exemption can not be shown to have increased the "amount of the tax, which the other taxpayers have been required to "pay.' Tiedeman on Municipal Corporations, Section 270, p. 526."

In Construction Company vs. Police Jury, cited, *supra,* it was said in the syllabus:

· "An agreement relieving a corporation from the payment of the "five-mill special tax for a consideration, is not in contravention of "Art. 203 of the Constitution, so long as no injury arises therefrom."

And in the body of the opinion the court said:

"The police jury can not defend and defeat the obligation on the ground that it made a discrimination operating unequally against taxpayers (p. 867).

"The release of certain taxpayers by the railroad company does not "operate *injuriously;* the rate of taxation remains the same."

In our opinion the defense set up by the police jury is untenable, and can not be sustained; on the contrary, that the demand of the relator is just and well founded.

It is therefore ordered, and decreed, that the judgment appealed from be annulled and reversed; and it is further ordered, and decreed, that the relators' provisional *mandamus* be made peremptory as to all the respondents, and that they be taxed with all costs of both courts.

BLANCHARD, J., takes no part in this decision, having been formerly of counsel for plaintiff.