| | |
|---|---|
| 104 | 11 |
| 118 | 400 |
| 119 | 536 |

| Louisiana | |
|---|---|
| 104 | 11 |
| 125 | 611 |
| 125 | 868 |
| 125 | 869 |

## No. 13,519.

## GUSTAVE GUILLORY ET ALS. VS. AVOYELLES RAILWAY CO., SHERIFF, ET ALS.

### SYLLABUS.

1. By the terms of the Statute (Act 106 of 1892) an election held to take the sense of property tax-payers, on a proposition to grant a tax in aid of a railway enterprise, may be contested by tax-payers in interest on grounds of "fraud, illegality and irregularity."
2. But the suit must be brought within three months after the promulgation of the result of the election.
3. The words "illegality and irregularity" are broad in their scope and embrace all matters preceding the election and leading up to it, as well as matters affecting the election itself.
4. Thus, a suit contesting a special tax election, and seeking to avoid the tax levy predicated thereon, on the ground that the petition of property tax-payers addressed to the Police Jury, asking that body to order the special election, contained less than one-third of all the property tax-payers of the Parish, must be brought within three months from the promulgation of the result of the election.
5. Only those persons who are named in the record as parties plaintiff or defendant, or who made themselves parties thereto by intervention, are within the meaning of the term "parties to a suit."
6. The timely institution of a contesting suit by certain of the tax-payers which suit is compromised and discontinued, cannot have the effect of suspending the perscription or peremption of the statute in favor of other tax-payers who did not sue in time but bethought themselves to sue afterwards.
7. Substantial compliance on part of the grantee with the terms and conditions of the grant suffices.

APPEAL from the Tenth Judicial District, Parish of Avoyelles — *Edwards, J., ad hoc.*

*Adolph Vallery Coco* and *G H. Couvillon & Son* for Plaintiffs, Appellants.

*Howe, Spencer & Cocke* and *William H. Peterman* for Defendants, Appellees.

The opinion of the court was delivered by

BLANCHARD, J. This action seeks to have declared void a levy of special taxes in favor of defendant company.

The tax assailed is a five-mill tax for ten years—from 1895 to 1904, both inclusive—upon the taxable property in the Parish of Avoyelles.

The object of the tax was to secure the construction of a railway through the parish.

The railway was constructed, is now in operation and has been for the last several years.

The position of defendants is that the tax in aid of the railway enterprise was duly petitioned for by one-third of the property taxpayers of the parish; that this petition, addressed to the police jury, was favorably considered by that body; that an ordinance was duly adopted submitting the proposition to the vote of the property taxpayers; that the directions of the law relative to this submission were duly observed; that the tax election was held and a majority of the property taxpayers in number and amount of property, voting at said election, voted in favor of the proposition; that this result was duly declared by the returning officer of the parish and by proclamation of the police jury; that predicated upon the election and its result an ordinance was adopted by the jury levying the tax; that the conditions prescribed in the grant of the tax were fulfilled by the construction of the railway in the manner designated and within the limit of time fixed; and that thus the tax has been earned, is exigible and the railway company is entitled to the avails thereof.

The position of the plaintiffs, who are property taxpayers of the parish, is that one-third in number of the property taxpayers did not petition the police jury to order the tax election and submit the propo-

sition of the railway company to the voters of the parish owning property; that at the election which was held a majority in number and amount of the property tax-payers did not vote for the tax, but against it; that the proclamation of the result was false and fraudulent and served as no sufficient basis in law for the levying of the tax; that the railroad was not constructed between the points indicated within the time designated; that, therefore, the tax was not legally earned and is not due the company; and that the beneficiary is estopped to claim the tax by reason of certain conduct subsequent to the holding of the election and the levying of the tax.

From a judgment rejecting their demand plaintiffs appeal.

The date of this tax election was July 26, 1894, and the date of the promulgation of its result July 30, 1894.

The date of the ordinance of the police jury levying the tax was August 21, 1894.

The limit of time fixed within which the road was to be completed and put in operation was twenty months from the date of the election —July 26, 1894. It, therefore, expired March 26, 1896.

This is the third suit that has been brought contesting this tax election.

The first was instituted by George W. Sentell and other taxpayers on October 23, 1894.

This was within three months of the date of the promulgation of the result of the election and was timely.

The suit having been dismissed on exception, an appeal was prosecuted here, with the result that the judgment was reversed and the cause remanded for trial on its merits.

Sentell vs. Police Jury, 48 La. Ann. 96.

Following this, a compromise was entered into between plaintiffs and defendants by the terms of which the Railway Company released and abandoned the five-mill tax for ten years on the property owned by those in whose behalf the Sentell suit was brought, in consideration of which the suit was discontinued. This compromise, which is stated to have been entered into upon the authority of C. C. 3071 *et seq.,* was made the judgment of the court and the suit formally discontinued April 24, 1896.

In a little more than thirty days later J. M. Watson and five other taxpayers instituted a second suit seeking to avoid the tax levy.

It is stated in the petition that the action is brought not alone on behalf of the petitioners but also of 500 other taxpayers whose names are not included in the petition owing to the inconvenience which would result therefrom.

This suit remained on the docket without issue joined until February 6, 1899, when on motion of plaintiffs' counsel it was dismissed at their costs.

The reason of the long delay is explained in this way:—That the road had been placed in the hands of a receiver and to save the tax from passing under the receivership it was allowed for the time being to be tied up in court by the then pending suit and the injunction which had been issued therein.

It is shown that the final dismissal of the suit was the result of a compromise by which the railway company, while maintaining the validity and binding effect of the tax and securing the acknowledgment by the plaintiffs in that suit of its validity, agreed to release and remit in favor of all the taxpayers of the parish the special tax of and for the year 1895, together with interest and penalties, and the payment of a reasonable amount as fees to plaintiffs' attorneys.

The instant suit—the third of the series of contesting actions—was filed April 29, 1899. This was less than three months after the discontinuance of the Watson suit.

Besides setting up the regularity of all proceedings leading up to the levy of the tax, defendants pleaded as estoppel that plaintiffs participated in the election and acquiesced in its result by waiting, before taking action to contest the tax, until large sums of money had been expended in the construction, completion and equipment of the road.

They, moreover, pleaded the limitation of Act 106 of 1892 in bar of plaintiff's suit.

This statute gives the right, and the only right the law accords, to contest elections held to take the sense of property taxpayers on a proposition to grant a tax in aid of a railway enterprise. By its terms such an election may be contested by taxpayers in interest on grounds of "fraud, illegality and irregularity." But the suit must be brought within three months after the promulgation of the result of the election.

The words "illegality or irregularity" are broad in their scope and embrace all matters preceding the election and leading up to it, as well

TERM OF 1900-1901. 15

Guillory et als. vs. Railway Co. et als.

as matters affecting the election itself—*i. e.*, the holding of the election, the casting and counting of the votes, and the ascertainment and promulgation of the result.

Thus, if it be charged that the police jury, in ordering the election, did so on petitions of property taxpayers less than one-third in number of all the property taxpayers of the parish, this is good ground for contest under the statute, but must be taken advantage of within the time limited by the act—three months from the promulgation of the election —otherwise the right to contest on that ground, as well as on all other grounds affecting the legality and regularity of the tax, is lost.

This is the effect of the decisions of this court in Taxpayers vs. Police Jury, 52 La. Ann. 466; Railroad Co. vs. Sheriff, 52 La. Ann. 524; and Taxpayers vs. Tax Collector, 49 La. Ann. 1039.

The reason of the law is that if there be grounds for contesting the tax, those who complain should bring the matter to the attention of the courts within a reasonable time—not wait until the railway company, acting upon the faith of what has been done and of the inducement held out, has gone ahead and expended large sums of money in prosecuting the enterprise, the promotion of which was the object of voting the tax.

When a statute creates a right of action and stipulates the delay within which that right is to be executed, the delay thus fixed is not properly speaking one of *prescription*, but it is one of *peremption*.

Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost. Taylor vs. Cranberry, 94 N. C. 525; Cooper vs. Lyons, 9 Lea (Tenn.) 596.

The limitation pleaded against plaintiffs' action must be held good as to all matters leading up to the tax collection, including the holding and conducting of the election, the ascertainment and promulgation of its result and the levying of the tax thereunder, unless the suits, first, of Sentell and others, and afterwards, of Watson and others, had the effect of suspending, as to the present plaintiffs, the bar of the statute.

Such is the contention of plaintiffs.

They insist that as the Sentell suit was filed within three months of the promulgation of the election, the Watson suit within three months of the dismissal of the Sentell suit, and the present action within three

16        SUPREME COURT OF LOUISIANA.

Guillory et als. vs. Railway Co. et als.

months of the discontinuance of the Watson suit, the bar of the statute has never applied, the cause of action to contest the tax has never been lost to any taxpayer.

The argument is that the three suits must be regarded as a continuous attempt on the part of the taxpayers of the parish to set aside this tax, and that prescription or peremption has remained suspended.

The present suit was brought nearly four and a half years after the promulgation of the result of the tax election.

The railroad was long before constructed and in full operation—an instrumentality greatly assisting in the development of the parish and promoting the convenience and welfare of its people.

None of the present plaintiffs were parties of record to either of the suits of Sentell or Watson. Some of them claimed to have been and were of those who instigated the Watson suit and assisted in having it brought. But none of them were named as plaintiffs, or in any manner appeared in the record of the case as parties thereto.

Their contention is, being interested in the suit and same having been dismissed without their consent, they are entitled to renew the same, and ask that the present suit be considered such renewal.

The Watson suit was discontinued in open court on motion of counsel of record for plaintiff, with authority to that end from all parties who were plaintiffs of record.

It well settled that only those persons who are named in the record as parties plaintiff or defendant, or who make themselves parties thereto by intervention, are within the meaning of the term "parties to a suit." Merchants' Bank vs. Cook, 4 Pick. (Mass.) 405; Walker vs. Hill, 21 Me. 481; Houston vs. Drew, 36 S. W. Rep. 802; McPike vs. Walls, 54 Miss. 136; Davis vs. Higgins, 91 N. C. 382.

None others are bound by the judgment which may be rendered therein.

This court, in Missouri, Kansas & Trust Co. vs. Smart, Assessor, et als. 51 La. Ann. 423, where the legality of a special railroad tax was involved, reasserted this doctrine by laying it down that only those taxpayers who made timely resistance to the tax were concerned in the disposition of the suit brought, and that those who did *not* join in the suit are conclusively presumed to have acquiesced in the result of the election as it was officially proclaimed, and could not now be heard to complain. See p. 423.

That case, in effect, decides that those taxpayers who failed to make protest seasonably *for themselves,* cannot, after the lapse of time fixed by law for contesting a tax election, be heard to complain; that they cannot predicate any subsequent action in the courts on their part on the legal proceedings which other taxpayers had taken *in time.* In other words, that the timely institution of a contesting suit by certain of the taxpayers, which is compromised by releasing the plaintiffs therein from the tax, and the suit is dismissed, cannot have the effect of suspending the prescription or peremption of the statute in favor of those other taxpayers who did not sue in time but bethought themselves to sue afterwards.

The case last cited also effectually disposes of, against plaintiffs, their contention that defendant Railway Company, by releasing certain of the property taxpayers who had brought a contesting action within the limit of time prescribed by the statute, from the burden of the tax, destroyed the validity of the ordinance of the police jury levying the tax in its favor and estopped defendants from laying further claim to the tax. Also their contention that the obligation of the tax, being a solidary and indivisible one, the release of certain taxpayers was the release of all. Also their further contention that by the release from the tax of certain of the property in the parish, there was an infringement of the constitutional guaranty of the equality and uniformity of taxation.

With regard to the contention of plaintiffs that the tax has not been earned, we are of the opinion that the road was substantially completed within the time prescribed by the petition of the property holders and by the ordinance of the police jury.

The law (Sec. 7 of Act 35 of 1886) enacts that no part of the tax voted by property taxpayers shall be paid until the railway, in favor of which the same is voted, shall have been completed and in operation to such points as were specified.

Tracking this law, the taxpayers' petition stipulated that the road was to "reach the aforesaid points and be in operation within twenty months from the time said tax is voted," and that no portion of the tax shall be paid until the railroad is completed and in operation between the points specified.

The ordinance levying the tax sets forth that the tax collector should retain its proceeds in his hands and not pay it, or any part of it, over

to the beneficiary until and unless due and proper proof is made to him that the road was constructed and put in operation throughout the entire length within twenty months from the time of the holding of the election.

This proof was made to the satisfaction of the tax collector and the police jury.

On the day the limit of time expired, the latter body met in extra session at the county seat of the parish, where the last spike completing the road was to be driven.

One of the objects of the meeting was to appoint a committee to accept or reject the railroad.

The jury adjourned over until the next day when the president of the Railway Company appeared before it and announced the completion of the road in contract time and invited the jury to inspect the same.

Whereupon a resolution was adopted expressing to the president the thanks and appreciation of the people of the parish for the energy and determination he had shown in carrying to completion a great public enterprise in the face of extraordinary difficulties.

A committee of the jury was appointed to examine the road and make report.

This committee, when the police jury met again some ten days later, reported that they had, on April 6th, gone over the entire line of the road, found it in good condition and running order, affording safe and easy transportation of freight and passengers.

Whereupon a resolution, reciting the timely completion and operation of the road, and formally accepting same, and ordering the tax collector to proceed with the collection of the special tax, was adopted.

The evidence shows that a post had been placed at a point supposed to mark the corporation line of Marksville, the county seat, where the track of the railway was to cross same, and that before the limit of time expired the cross-ties and rails were laid to that point. Not with the best material in the way of cross-ties, and in the most approved style of laying railway tracks, it may be true, but, nevertheless, sufficiently so, we think, to meet the conditions of the grant.

It seems that some doubt developed as to where the corporation line actually was.

This doubt was not solved until during the trial of this case when an order of survey was made and executed, definitely locating the same.

It then appeared that the post referred to was not the line, but the difference is not enough to defect substantial compliance.

That the Railway Company was popularly held at the time to have met its contract, is evidenced by the fact that the day following the one upon which it reached Marksville, a public meeting of citizens was held there in celebration of the event, a large crowd was present, speeches were made, among them one on behalf of the police jury accepting the road, and a silver service was presented to the manager of the road.

With regard to the reconventional demand of the defendants, which was disallowed by the judge *a quo* and as to which an amendment of the judgment is asked here, taking all the circumstances of the case into consideration, we are not disposed to disturb the finding of the district judge.

The judgment appealed from is affirmed.