Judgment rendered April 8, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,598-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GAIL B. LINK,                                    Applicants
ADMINISTRATOR OF THE
ESTATE OF MICHAEL P. LINK

versus

TOTAL IMAGING CONCEPTS,                          Respondent
INC.

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 655,580

Honorable Brady D. O'Callaghan, Judge

* * * * *

| | |
|---|---|
| COOK, YANCEY, KING & GALLOWAY, APLC<br>By: William Drew Burnham | Counsel for Applicants, Gail B. Link, Administrator of the Estate of Michael P. Link; and Estate of Michael P. Link |
| AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC<br>By: Curtis Ray Shelton | Counsel for Respondent |

* * * * *

Before STONE, STEPHENS, and ROBINSON, JJ.

**ROBINSON, J.**

Michael P. Link ("Mike Link") was a 50% shareholder in Total Imaging Concepts, Inc. ("TIC"), a Louisiana corporation, at the time of his death on August 31, 2024. Shortly after Mike Link's death, the remaining shareholder and director of TIC, Richard Lee, employed La. R.S. 12:1-810 to fill Mike Link's vacancy on the Board of Directors with Richard Lee's daughter, Holly Lee. The probate of Mike Link's estate was opened in his resident state of Ohio. Gail Link, the surviving spouse of Mike Link, was appointed as the administrator of the estate. The estate includes Mike Link's 50% ownership of the issued and outstanding stock in TIC.

Gail Link, administratrix of the estate of Michael P. Link (the "Estate"), filed a lawsuit in Caddo Parish on February 19, 2025, on behalf of the Estate as a 50% shareholder of TIC, for writs of mandamus to compel TIC to produce certain corporate documents and to hold a shareholder meeting. TIC filed a reconventional demand against the Estate on March 21, 2025, asserting various claims of breach of fiduciary duty by Mike Link regarding actions taking place in January 2021. An action had previously been filed in Caddo Parish on October 4, 2022, by TIC against Mike Link and other defendants for the same claims. The action was then removed to federal court after a motion to remove was filed by Mike Link. All other defendants were dismissed. The action was then dismissed without prejudice by the federal court for lack of personal jurisdiction. The Estate filed exceptions of peremption and prescription to TIC's reconventional demand pursuant to La. R.S. 12:1502, which TIC opposed. The district court denied the Estate's exceptions on May 27, 2025. The Estate filed a

writ application with this Court on June 26, 2025, which was granted to docket on October 21, 2025.

For the following reasons, we grant the writ application and REVERSE the trial court's judgment, hereby granting the Estate's peremptory exception of peremption to TIC's reconventional demand and dismissing with prejudice TIC's reconventional demand against the Estate.

## FACTS AND PROCEDURAL HISTORY

Gail Link, in her capacity as administrator of the estate, sought certain information from TIC about its governance, assets, and finances, and related matters from TIC, and requested a shareholder meeting. TIC questioned whether Gail Link was an authorized representative of the estate, whether the estate was considered a shareholder of record for purposes of ownership transfer, rights to corporate documents, and rights to request and be notified of a shareholder meeting, and the permissible scope of the requested documents. As a result, there was ongoing communication between counsel for Gail Link and TIC regarding the appropriateness of distribution of the requested documents and shareholder meeting.

Gail Link filed suit on behalf of the estate on February 19, 2025, for writs of mandamus to the Caddo Parish district court ordering TIC to compel production of corporate records and the holding of a shareholder meeting. On March 21, 2025, TIC filed a dilatory exception of lack of procedural capacity and a peremptory exception of no right of action with respect to Gail Link's ability to bring the lawsuit seeking the corporate documents and shareholder meeting. Following a hearing on March 31, 2025, the district court sustained TIC's exceptions. The court rendered an order on April 21,

2

2025, opening an ancillary succession and appointing Gail Link as administratrix of the estate.

Along with the exception filed on March 21, TIC filed a reconventional demand against the estate of Mike Link, alleging as follows:

1.  TIC had a lease contract for a CT 16 Slice mobile unit to the Reception and Medical Center, a state prison and hospital located in Lake Butler, Union County, Florida. The prison also rented an MRI mobile unit from another vendor.

2.  The CT Slice mobile unit was being serviced by Terence Link (Mike Link's brother), Brenda Link (Terence Link's wife), and their company, Imaging Support Services, Inc. ("ISS").

3.  Mike Link had informed TIC's president, Richard Lee, that the prison had become dissatisfied with the MRI mobile unit owned by the third party, and there was an opportunity for TIC to get a new lease with the prison to furnish a MRI 11X mobile unit and an upgraded GE 64 Slice CT mobile unit.

4.  Mike Link represented to Richard Lee that it would be to TIC's advantage if ISS would "front" the lease contract to the prison and pass the lease payments through to TIC for the two upgraded mobile units. Mike Link represented that this would be a good opportunity and Terence Link could be trusted to obtain the lease in his company's name as a front for TIC.

5.  TIC obtained two upgraded mobile units and furnished them to the prison in late 2019 under a lease nominally in the name of ISS for $16,000 per month each.

6.  On or about January 5, 2021, Mike Link called Richard Lee and informed him that the prison was unsatisfied with the two mobile units and how they were being serviced, and wanted the machines picked up by January 19, 2021.

7.  Richard Lee told Mike Link he would contact the prison to discuss their dissatisfaction with the machines, but Mike Link told him not to do so because it would interfere with Terence Link's contract.

8.  TIC was not given an opportunity to provide new or replacement machines to the prison

9.  As of January 2021, the rental payments to TIC were behind in the amount of $160,000 (5 months late). Richard Lee questioned Mike Link about the arrearage, and Mike Link only stated that he thought Terence Link owed the money to TIC.

3

10. TIC alleges Mike Link worked with Terence Link to cause TIC's machines to be replaced with, or allowed the machines to be replaced with, machines owned by Terence Link or ISS.

11. TIC alleges Mike Link worked with Terence Link and ISS to allow them to receive and retain $160,000 owed to TIC.

12. TIC alleges Mike Link failed to act in good faith and the best interests of TIC.

13. TIC alleges Mike Link failed to discharge his duties to TIC by failing to take such action as necessary for TIC to keep its mobile units in the prison.

14. TIC alleges Mike Link failed to discharge his duty of loyalty to TIC, favoring Terence Link, Brenda Link, and ISS.

15. TIC alleges Mike Link acted with a lack of objectivity due to his familial, financial, or business relationship with Terence Link, Brenda Link, and ISS, over the interests of TIC.

16. TIC shows it has suffered harm on account of Mike Link's conduct in the form of a loss of $160,000 in lease payments and the loss of the opportunity to lease MRI and CT machines to the prison on an ongoing basis.

17. TIC sought damages for Mike Link's violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, violation of his duties as an officer and director of TIC, conversion of TIC's corporate opportunity to continue its lease with the prison or to furnish new equipment to lease to the prison; and tortious interference with business relations.

A previous lawsuit filed by TIC in Caddo Parish district court on October 4, 2022, against Mike Link, Terry Link, Brenda Link, and ISS, alleged:

1. Violation of Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401;

2. Breach of duty of a corporate officer and director;

3. Conversion of corporate opportunity by an officer or director;

4. Tortious interference with business;

4

5.      Breach of contract; and

6.      Detrimental reliance.

TIC amended its petition to include additional allegations against Mike Link to include claims that he violated La. R.S. 12:1-830, by failing to: (1) act in good faith and in a manner that he could reasonably believe to be in the best interests of the corporation; (2) take such action as necessary for the corporation to keep its MRI and CRT machines in the prison; and (3) discharge his duty of loyalty to the corporation and, instead, favoring Terence Link and/or ISS over the interests of TIC.  It is uncontested by the parties that the claims made in TIC's March 2025 reconventional demand were consistent with those made in its October 2022 suit as amended.

Mike Link filed a motion to remove the October 2022 lawsuit to the United States District Court for the Western District of Louisiana on November 11, 2022.  That motion to remove was granted by the court.  TIC then filed an amended complaint to remove Terry Link, Brenda Link, and ISS as defendants based on the belief there was no basis for personal jurisdiction to be asserted against those defendants in that action.  A separate action was later filed in Tennessee state court against the removed defendants.  After the federal court granted Mike Link's motion for limited discovery but denied TIC's, not allowing discovery on the merits, Mike Link filed a motion to dismiss the suit for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.  The federal court ruled on July 16, 2024, that it could not exercise personal jurisdiction over Mike Link and dismissed TIC's claims against Mike Link without prejudice. The claims against Mike Link were not refiled until TIC's reconventional demand was filed in Caddo Parish district court on March 21, 2025.

On March 28, 2025, the Estate filed exceptions of peremption and prescription to TIC's reconventional demand based on La. R.S. 12:1502, since more than three years had elapsed between Mike Link's alleged wrongdoing in January 2021 and the March 2025 reconventional demand. TIC opposed the Estate's exceptions arguing that (1) La. R.S. 12:1502's peremptive period can be interrupted; and (2) the suit filed in 2022 by Richard Lee, purportedly on behalf of TIC, interrupted prescription although it was dismissed by the federal court for lack of personal jurisdiction.

The Estate filed a reply to TIC's opposition to its exceptions, claiming the three-year period set forth in La. R.S. 12: 1502 is peremptive, stating that the October 2022 suit could not have interrupted even a prescriptive period because the court lacked personal jurisdiction over the defendant. The Estate further claimed that the suit was not filed by an authorized party because Richard Lee had no authority to bring a suit as only one of TIC's two shareholders and directors and no meeting of the Board of Directors was noticed or held to authorize the filing of the suit against Mike Link. The Estate also claimed that, while Richard Lee was a shareholder at the time he filed the federal lawsuit, the lawsuit was not a derivative action and no prerequisites to file such an action were satisfied by Richard Lee.

Following a hearing on May 27, 2025, the district court overruled the Estate's peremptory exceptions of prescription and peremption. The Estate applied for supervisory writ, which was granted to docket.

## DISCUSSION

La. R.S. 12:1502(C) – (E) provide certain periods of limitation for any action filed against the officer or director of a Louisiana corporation for breach of fiduciary duty or intentional breach of a duty of loyalty.

6

C.    No action for damages against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.

D.    No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.

E.    The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption except by timely suit filed in a court of competent jurisdiction and proper venue.

The statute sets out three relevant time periods:  (1) a one-year prescriptive period for most covered claims, including negligent unlawful distributions and breach of fiduciary duty; (2) a two-year prescriptive period for certain specified intentional breaches or violations such as intentional breach of a duty of loyalty, and acts or omissions involving bad faith or fraud; and (3) an overall three-year limit on when any of such suits may be filed regardless of when the alleged act or omission was discovered or should have been discovered.

The district court held that La. R.S. 12:1502(E) should be interpreted to mean that all three referenced time periods in La. R.S. 12:1502(C) and

7

(D) are subject to interruption or suspension if a suit is timely filed in a court of competent jurisdiction and proper venue.  It reasoned as follows:

> What I see 12:1502 doing is setting up itself, asking, reviewing and applying courts to ignore all the other jurisprudence of prescription and peremption and instead apply the statute itself as written.  And what the statute as written seems to privilege as the sole basis upon which time limits can be interrupted or suspended is by filing of suit in a court of competent jurisdiction.  I believe that is the preference, that is the privilege, that is the, it's a preferencing of that as to the exclusion, perhaps, of all other means.  And because of that, I do believe that the distinction between prescription and peremption is somewhat meaningless here.  It is simply a time limit that can be interrupted by the filing of a suit in a court of competent jurisdiction.

The assignment of error regarding the district court's interpretation of La. R.S. 12:1502 concerns purely a legal determination.  Legal findings are subject to a de novo standard of review.  *State v. Hunt*, 09-1589 (La. 12/1/09), 25 So. 3d 746; *La. Mun. Ass'n v. State*, 04-0227 (La. 1/19/05), 893 So. 2d 809; *Cleco Evangeline v. La. Tax Comm'n*, 01-2162 (La. 4/3/02), 813 So. 2d 351.

The Estate argues that the three-year limitation period is peremptive and 12:1502(E) should not be interpreted to interrupt or suspend that specific period.  It claims that the latest date which TIC could assert its claims against Mike Link concerning alleged actions in January 2021 was in January 2024.  As such, it asserts that TIC's claims against the Estate would be fully extinguished by peremption per La. C.C. art. 3458, which provides, "Peremption is a period of time fixed by law for the existence of a right.  Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."  The Estate further argues that the lower court's ruling is in direct contradiction with this Court's holding in *Succession of Tripp*,

8

55,496 (La. App. 2 Cir. 5/29/24), 387 So. 3d 939, which interprets the limitation periods in La. R.S. 12:1502.

TIC argues that La. R.S. 12:1502 is a hybrid statute creating time limitations that merely have peremptive attributes. As such, it argues that it is irrelevant whether the three-year periods in La. R.S. 12:1502(C) and (E) are peremptive or prescriptive, because La. R.S. 12:1502(E) expressly provides that the time limitations provided in the statute are subject to suspension and interruption "by timely suit filed in a court of competent jurisdiction and proper venue." TIC claims this interpretation is consistent with La. C.C. art. 3461, which provides that "Except as otherwise provided by law, peremption may not be renounced, interrupted, or suspended," because La. R.S. 12:1502(E) is an "except as otherwise provided by law" statute. It argues that had the legislature meant to limit the effect of La. C.C. art. 3461, it would have done so. TIC claims that its October 2022 lawsuit was filed timely in a court of competent jurisdiction in order to interrupt and suspend the periods set forth in La. R.S. 12:1502, such that the district court correctly overruled the Estate's peremptory exceptions. In addition, TIC argues that there is no conflict with *Tripp*, *supra*, because that case did not present an issue of whether a *timely filed* action would interrupt and suspend the applicable periods in La. R.S. 12:1502.

In *Tripp*, *supra*, Casey Arehart, daughter of the deceased Donna Tripp and legatee of her estate, a 50% shareholder in the corporation ESPS, filed a petition for damages on September 1, 2022, against Jimmie Tripp, Donna's surviving spouse and the other 50% shareholder of ESPS, in Jimmie's capacity as the dative testamentary executor of the succession for breaches of his fiduciary duties, relating to the shifting of assets from the corporation

ESPS to Jimmie's corporation AMC, which was formed shortly after Casey's appointment as executrix in June 2015. This Court found that Casey had the authority to obtain the information necessary to discover and pursue a claim to enforce any shareholder rights, either on behalf of the estate during the time she served as the executor or individually as a legatee, during the time period of October 15, 2013, to May 29, 2019, when Casey was removed as the executrix and Jimmie was appointed. As such, Jimmie's alleged wrongful actions starting in June 2015 should have been discovered by Casey during that time frame, and a claim against Jimmie made pursuant to La. R.S. 12:1502 for actions he took prior to his appointment as executor was barred by peremption in 2018, approximately four years before she filed suit. This Court further found that any claims related to any of Jimmie's actions after his appointment as executor were subject to the "catch-all" 10-year prescriptive period in La. C.C. art. 3499.

This Court held in *Tripp*, *supra*, that the language in La. R.S. 12:1502(C) and (D) that "in no event shall [a shareholder derivative suit] be brought more than three years from the date of the alleged act, omission, or neglect" was clearly peremptive. "In addition to the prescriptive provisions, La. R.S. 12:1502 also *perempts* an action brought more than three years from the date of the alleged act or omission." *Id*. at 950. Per La. C.C. art. 3458, there is a definitive three-year period fixed by the statute for the existence of the right to bring the shareholder derivative suit.

Our jurisprudence has long recognized a major distinction between a statute of limitations (prescription) and a peremption. *Guillory v. Avoyelles Ry. Co.*, 104 La. 11, 28 So. 899 (1900); *Pounds v. Schori*, 377 So. 2d (La. 1979); *Hebert v. Doctors Mem. Hosp.*, 486 So. 2d 717 (La. 1986). When a

10

statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. *Naghi v. Brener*, 08-2527 (La. 6/26/09), 17 So. 3d 919; *Reeder v. North*, 97-0239 (La. 10/21/97), 701 So. 2d 1291; *Guillory*, *supra*. Prescription bars the remedy sought to be enforced and terminates the right of access to the courts for enforcement of the existing right. *Naghi*, *supra*; *Reeder*, *supra*; *Pounds*, *supra*; *Guillory*, *supra*. A peremptive statute, however, totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced. *Id*. Since peremption admits neither of interruption nor suspension, the relevant inquiry is whether the time limitations provided in the statute in question is peremptive. *Id*.

In *Pounds*, *supra*, the Louisiana Supreme Court determined that the time limitation for a husband's disavowal action under then La. C.C. art. 191 was considered peremptive, noting that the main consideration was the purpose sought to be achieved by the particular limitation period involved, and public policy strongly favored the strict construction of articles governing disavowal actions. In that case, an action was filed in Oklahoma within the applicable peremptive period but dismissed by that court for lack of personal jurisdiction after the expiration of the period and then refiled in a Louisiana district court. The Court found that the filing of the action in Oklahoma was of no consequence because the statute providing that prescription was interrupted by the filing of suit in a court of competent jurisdiction was inapplicable due to the period of limitation being peremptive.

11

The Louisiana Supreme Court later overturned the holding in *Pounds*, *supra*, but only due to legislative action resulting from public policy changes concerning disavowal actions. *Gallo v. Gallo*, 03-0794 (La. 12/3/03), 861 So. 2d 168. It did not repudiate that the time period in which a presumptive father must file a suit for disavowal is peremptive. *Id*. The Louisiana Supreme Court's recognition of peremption as a concept distinct from prescription formed the basis of enactment by the legislature in 1982 of La. C.C. arts. 3458-3461. *Id*.; *Pounds*, *supra*.

In *Reeder*, *supra*, a legal malpractice action was filed against the defendant based on the alleged negligent failure to include all causes of action in a suit filed in federal court on July 10, 1989. The limitations periods were covered by the newly enacted La. R.S. 9:5605, which provided that, "even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect." *Id*. La. R.S. 9:5605(B) further stated that "with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed on or before September 7, 1993, without regard to the date of the discovery of the alleged act, omission, or neglect." *Id*. The court of appeal held that, although the attorney-client relationship was in existence and the attorney was actively attempting to remedy the alleged malpractice until the judgment giving rise to the malpractice claim became definitive on February 28, 1994, a legal malpractice claim did not ripen into a cause of action until that final judgment; thus, peremption did not begin to run until the facts ripened into a viable cause of action sufficient to support a lawsuit. *Id*. The Louisiana Supreme Court reversed the court of appeal's decision. It found

12

that, under the clear wording of La. R.S. 9:5605, because the negligent act occurred prior to September 7, 1990, the plaintiff had until September 7, 1993, to file the malpractice action. *Id.* The Court noted:

> While the terms of the legal malpractice statute of limitations statute may seem unfair in that a person's claim may be extinguished before he realizes the full extent of his damages, the enactment of such a statute of limitations is exclusively a legislative prerogative. La. R.S. 9:5605 is analogous to the medical malpractice statute of limitations wherein a person's cause of action may prescribe before he even knows he has a cause of action because of the latency period of his condition. Nevertheless, we have held that the three-year medical malpractice limitations period begins to run on the date of the alleged act, omission, or neglect, reasoning that … statutes of limitations are exclusively a legislative prerogative. In setting a statute of limitation, a legislature does not eliminate the remedy for a civil wrong; it makes a legislative determination that after a certain period of time no cause of action can arise.

*Id.* at 1296.

In *Naghi, supra*, the plaintiffs timely filed their original petition for damages in their individual capacities within one year of discovery of the alleged legal malpractice, pursuant to La. R.S. 9:5605. Since the plaintiffs did not own the property at issue individually, they filed an amended petition to name the proper owner of the property, the plaintiffs' business. However, the amended petition was filed after the one-year peremption period had lapsed. The Louisiana Supreme Court reversed the lower courts' rulings and held that the amended petition did not relate back to the original petition for purposes of peremption. *Id.* It explained:

> While the relation back of a pleading may not technically interrupt or suspend a prescriptive or peremptive period in the sense contemplated by La. C.C. arts. 3462-3472, there can be no escaping the fact that relation back interferes with the operation of the prescriptive or peremptive time period in that it avoids its operation. Because it is well established that "nothing may interfere with the running of a peremptive period," *Hebert, supra* at 723, and avoiding the peremptive period certainly interferes with the running of that period, relation back of an amended or

13

supplemental pleading adding a plaintiff is not allowed to avoid the running of a peremptive period such as that found in La. R.S. 9:5605. Further, the relation back theory assumes that there is a legally viable claim to which the pleading can relate back. Prescription only prevents the enforcement of a right by legal action, it does not terminate the natural obligation. *Pounds*, *supra*; *Hebert*, *supra*. Peremption, however, destroys the cause of action itself. *Guillory*, *supra*; *Pounds*, *supra*; *Hebert*, *supra*. Because the cause of action no longer exists after the termination of the peremptive period and any right to assert the claim is destroyed, there is nothing to which an amended or supplemental pleading filed after the peremptive period has expired can relate back.

*Id*. at 925.

The Court also referred to its holding in *Reeder*, *supra*, at 1297-1298, noting:

While we realized the unfairness that may result from this holding, we recognized that the enactment of a statutory period for filing suit is strictly a legislative prerogative, just as it would be within the legislative prerogative not to allow a legal malpractice action at all. Because the statute is peremptive, rather than prescriptive, we declined to allow the period to be suspended by the "continuous representation rule," holding that, because peremptive periods may not be renounced, interrupted, or suspended, the doctrine of *contra non valentum* does not apply.

*Id*. at 922.

Also shedding light on the application of La. R.S. 12:1502(E) to the three-year limitation periods, it is noteworthy that the clause, "unless it is filed in a court of competent jurisdiction and proper venue," follows the language in La. R.S. 12:1502(C) and (D) referencing the one- and two-year periods but not the three-year periods. La. R.S. 12:1502(E) repeats that very clause with the language, "except by timely suit filed in a court of competent jurisdiction and proper venue." The fact that the statute specifically repeats the clause from the one- and two-year limitation periods in (C) and (D), but not for the three-year periods, is indicative of legislative intent that (E) apply

only to the one- and two-year prescriptive periods. We find that the purpose of 12:1502(E) is to limit the *method* in which prescription may be suspended or interrupted, the only way being by timely filing of suit in a court of competent jurisdiction and proper venue, as opposed to any other method such as *contra non valentem*.

The jurisprudence is clear that a time limitations period determined to be peremptive cannot be interrupted or suspended. Further, the construction of the language throughout La. R.S. 12:1502 is supportive of that legislative intent. This Court determined in *Tripp*, *supra*, that the three-year limitation periods of La. R.S. 12:1502 were peremptive based on the definitive language that "*in no event* shall [a shareholder derivative suit] be brought more than three years from the date of the alleged act, omission, or neglect." (Emphasis added.) Therefore, the expiration of the three-year peremptive period terminates any cause of action pursuant to La. R.S. 12:1502.

Alternatively to the Estate's argument that there is a three-year peremptive period in La. R.S. 12:1502, it claims that, even if all periods of limitation in the statute are subject to interruption, interruption from the earlier-filed suit is not possible in this instance because the federal court had no personal jurisdiction over Mike Link, such that the lawsuit was not filed in a court of competent jurisdiction and proper venue per La. R.S. 12:1502(E). The Estate also alternatively argues that even if a lawsuit filed in a court devoid of personal jurisdiction could interrupt prescription, there was no standing to file suit because Richard Lee was without authority to act on behalf of TIC; therefore, the suit was incapable of interrupting prescription. However, since the three-year limitation periods in 12:1502(C) and (D) are peremptive clauses and 12:1502(E) should not be interpreted to

15

interrupt such peremptive periods, any further determination regarding the interpretation of 12:1502(E) is hereby pretermitted.

## CONCLUSION

For the foregoing reasons, we grant the writ application, REVERSE the trial court's judgment, and hereby grant the Estate's exception of peremption to TIC's reconventional demand and dismiss with prejudice TIC's reconventional demand against the Estate. All costs of this proceeding are assessed to TIC.

**REVERSED**.